UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ARLINE M. MACNEIL,                  )
                                    )
    Plaintiff                      )
                                    )
v.                                  )    1:10-cv-00393-JAW
                                    )
SOCIAL SECURITY ADMINISTRATION      )
COMMISSIONER,                       )
                                    )
    Defendant                      )

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Arline M. MacNeil has failed to establish the existence of severe impairments, resulting in a denial of MacNeil's application for supplemental security income benefits under Title XVI of the Social Security Act. MacNeil commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the May 24, 2010, decision of Administrative Law Judge John L. Melanson because the Decision Review Board "found no reason" to disturb the Judge's decision. (Docs. Related to Admin. Process, Doc. No. 8-2, R. 1.[1]) Judge Melanson's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Id., R. 7-14.)

At step 1 of the sequential evaluation process, the Judge found that MacNeil has not engaged in substantial gainful activity since May 7, 2008, the date of her application for Title XVI benefits. (Findings 1, R. 9.)

---

[1]     The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

The Judge found that MacNeil has the following medically determinable mental impairments: a history of opiate dependence, a mood disorder, and an anxiety disorder. (Finding 2, R. 9.) However, for purposes of step 2, the Judge found that these impairments, whether singly or in combination, did not significantly limit MacNeil's ability to perform basic work-related activities for 12 consecutive months and are not expected to impose such a limitation for in excess of 12 months. Consequently, the Judge found that MacNeil does not have a severe impairment for purposes of the Social Security Act. (Finding 3, R. 9.) In making this finding, the Judge found that MacNeil's allegations of disabling manic and depressive episodes were not credible to the extent the allegations exceed the scope of his findings. (R. 10.) The Judge reasoned that, although the medical evidence establishes the diagnoses of opiate dependence, bipolar disorder, and anxiety, "it does not show that her impairments have more than slightly interfered with her ability to perform basic work tasks for a continuous period of at least 12 months since May 2008, the date she filed her current application for benefits." (Id.) The Judge discussed the evidence of record and concluded with an assessment that MacNeil has only mild limitations in activities of daily living, mild difficulties in social functioning, and mild difficulties maintaining concentration, persistence, and pace, with no episodes of decompensation which have been of extended duration. (R. 13.)

**Discussion of Plaintiff's Statement of Errors**

MacNeil argues that the Judge erred by failing to consider her request that he reopen a prior application dated August 22, 2007, in which MacNeil alleged disability starting December 1, 2005. (Statement of Errors at 1-2, Doc. No. 11.) MacNeil also argues that the Judge erred by focusing on whether her *symptoms* were severe for 12 months or more, rather than whether her *impairments* were severe (having more than a minimal effect) for a sufficient duration. She says

2

the record demonstrates that her impairments are severe and that the impact of her intermittent symptoms is something that must be evaluated in the context of a residual functional capacity assessment. (Id. at 3-4.) Finally, MacNeil contends that the Judge erred in his use of the expert opinion evidence by failing to give the opinion of consulting examiner James Werrbach, Ph.D. (Ex. 7F) controlling weight; failing to evaluate or mention the psychiatric review technique and mental residual functional capacity assessment offered by consulting reviewer Lewis Lester, Ph.D. (Exs. 8F & 9F); and by placing the greatest weight on the subsequent psychiatric review techniques of Brenda Sawyer, Ph.D. (Ex. 11F), and David Houston, Ph.D. (Ex. 13F). (Statement of Errors at 5-8.) As to the Sawyer and Houston opinions, MacNeil disputes whether these experts ever reviewed the Werrbach examination and argues that, if they did not, then they cannot serve as substantial evidence in support of the Judge's determination. (Id. at 9-10.)

### A.  The Evidence

The record includes hospitalization records from Acadia Hospital dated December 2004 and April 2005. (Exs. 4F-6F.) These predate the most recent application date by more than two years. In addition, the record contains treatment notes from St. Elizabeth's Medical Center created between 1999 and 2004 (Ex. 16F), suggesting that the earlier records have been incorporated into the record by the Judge. The records contain diagnoses of opioid dependence, panic attacks with agoraphobia, post-traumatic stress disorder and cannabis abuse. (R. 244.) When MacNeil presented herself to Acadia in 2004 she did not "identify a specific precipitant to her decision to seek substance abuse treatment at this time," but reported being ashamed of her addiction and desirous of getting clear of it before her son was old enough to be aware of the issue. (R. 261.) The record reflects symptoms and a history that make her effort to obtain psychological treatment understandable and commendable, including severe psychosocial

stressors dating back to childhood abuse and trauma. (R. 262-67.) This presentation resulted in a course of opiate agonist therapy (methadone), the addition of a Bipolar II diagnosis, and a lithium prescription reflected in the April 2005 treatment notes. (Ex. 5F, R. 269-70, 284.) MacNeil complained that her medications were not working as of her April 2005 hospital visit. (R. 287.) Her 2005 records report a substance abuse history including Suboxone treatment from January 2004 through April 2004. (R. 289.) MacNeil continued in Acadia Hospital's narcotic treatment program through 2008, which treatment consisted largely of medication management and some individual and group therapy. (Exs. 12F, 14F, 15F.) Bipolar disorder and opiate dependency diagnoses have endured. (R. 521, 642.) Exhibit 16F indicates a diagnosis of post-traumatic stress disorder in 1999, and treatment involving antidepressants, when MacNeil was 22 years of age, based in part on the same childhood abuse. (R. 798-99.)

Maine Disability Determination Services referred MacNeil for a psychological evaluation on November 2, 2007, by James R. Werrbach, Ph.D. (Ex. 7F.) Dr. Werrbach evaluated MacNeil based on an interview and progress notes from Acadia Hospital during the year 2005. (R. 312.) MacNeil informed Dr. Werrbach that her application for disability benefits was based on symptoms arising from post-traumatic stress disorder, bipolar disorder, and anxiety. (Id.) Consistent with the treatment history, Dr. Werrbach diagnosed post-traumatic stress disorder, bipolar disorder, social phobia, and opioid dependency and scored MacNeil's globalized assessment of functioning as 40 to 45. (R. 314.) Dr. Werrbach predicted there would be difficulties with work-related activities. (R. 315.) Later in November 2007, Maine Disability Determination Services obtained a psychiatric review technique analysis from Lewis F. Lester, Ph.D. (Ex. 8F.) Dr. Lester opined that a residual functional capacity assessment was called for on account of moderate difficulties in maintaining social functioning and in maintaining

4

concentration, persistence, and pace. (R. 317, 327.) Dr. Lester's mental residual functional capacity assessment ruled out detailed instructions and predicted moderate difficulties in areas of attention and social interaction. (R. 331-32.) His narrative assessment called for simple, repetitive work that would not involve public interaction and indicated that MacNeil can interact with coworkers and supervisors in a normal work setting and adapt to occasional and routine changes. (R. 333.)

Maine Disability Determination Services sought an additional consultative review from Brenda Sawyer, Ph.D., who reviewed records dated between December 1, 2004, and her August 26, 2008, performance of the psychiatric review technique. (Ex. 11F.) Dr. Sawyer opined that the records demonstrate a non-severe level of mental impairment. (R. 349.) Dr. Sawyer identified an affective disorder consisting of the bipolar disorder (R. 352) and also anxiety disorder (R. 354). In Dr. Sawyer's opinion, the evidence she considered indicated that MacNeil suffered only mild limitations in all of the relevant work-function areas. (R. 359.) In her notes, Dr. Sawyer indicated:

> Claimant reports being clean for almost 3 years. In that time, her mood has stabilized significantly. She had an increase in symptoms around the time of deciding to leave an abusive relationship. MSE has been WNL at group tx and she is an active participant. Impairment is non-severe.

(R. 361.)

Maine Disability Determination Services once more referred the file in response to a request for reconsideration. On December 3, 2008, David Houston, Ph.D., completed the psychiatric review technique and reported an assessment that MacNeil's mental impairment is non-severe for purposes of the Social Security Act, echoing the opinion of Dr. Sawyer. (Ex. 13F.) In effect, both Dr. Sawyer and Dr. Houston recognized the existence of the diagnoses, but they have opined that the evidence of functional impairment is no greater than "mild" in all three

5

of the "B" criteria, work-functioning categories of the psychiatric review technique, with no episodes of decompensation, and no evidence to satisfy the "C" criteria of the listings. (R. 359-60, 634-35.)

B.  Discussion

MacNeil alleges error based on the Judge's failure to address her request to reopen a prior adverse determination of an August 2007 application for SSI benefits (her pending application is dated May 7, 2008). Additionally, she asserts that the Judge committed reversible error by finding that her impairments did not result in severe limitations over a 12-month period and by relying on less than substantial evidence in support of this conclusion.

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

*1.   Request for reopening*

The applicable regulation provides as follows:

> Conditions for reopening.
>
> A determination, revised determination, decision, or revised decision may be reopened--
>
> (a) Within 12 months of the date of the notice of the initial determination, for any reason;

> (b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or
>
> (c) At any time if it was obtained by fraud or similar fault. In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time.

20 C.F.R. § 416.1488. The Judge implicitly denied MacNeil's request to reopen her August 2007 application. He states in his decision that MacNeil failed to show that she suffered from a disability "since May 7, 2008, the date the application was filed." (Finding 4, R. 13.) However, the Judge admitted into the record of the current application, medical evidence developed at the behest of Maine Disability Determination Services in relation to the earlier application; namely, the Werrbach psychological examination report and the Lester opinions. I am not persuaded that it was reversible error to deny the request to reopen while simultaneously admitting the documents in question to supplement the record developed by Disability Determination Services for the pending application. MacNeil conceded at oral argument that the Commissioner was not required to reopen her earlier application and it is apparent from the medical records that the consulting experts of record and the Judge all considered treatment records predating the most recent application date. In other words, for purposes of MacNeil's primary challenge—that the Judge disregarded her course of treatment and artificially looked only at records subsequent to the application date—the record clearly reflects that the Judge admitted and took into his consideration medical records and expert opinions developed prior to the date of the current application.

2. *Dispositive treatment at step 2*

At step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or

7

mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairments must be expected to result in death or have lasted or be expected to last for a continuous period of at least 12 months. Id. § 416.909. As for the severity requirement, the claimant's burden at step 2 is a *de minimis* burden, designed simply to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the Commissioner may make a determination at step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. § 416.928.

Because the RFC assessment requires consideration of both severe impairments and those impairments found not severe at earlier stages of the sequential evaluation process, and because it is the claimant's burden to demonstrate the degree of limitation resulting from her impairments, an error in describing a given impairment as non-severe at step 2 is generally deemed harmless, unless the claimant can demonstrate that the error proved outcome determinative at a later stage of the process. Bolduc v. Astrue, No. 09-cv-220-B-W, 2010 WL 276280, at *4 n.3, 2009 U.S. Dist. Lexis 122049, *10 n.3, aff'd, 2010 U.S. Dist. Lexis 4005 (D. Me. Jan. 19, 2010) (citing cases).

MacNeil argues that the Judge erred by finding that her mental impairments do not satisfy the durational requirements of the Act. The record, quite clearly, indicates that MacNeil suffers

from longstanding mental impairments that have endured for years. The question is whether they impose severe limitations on work-related functioning. The questionable passage in the Judge's decision concerns his reasons for rejecting the opinion of Dr. Werrbach (who, incidentally, issued a report demonstrating a capacity for substantial gainful activity). Concerning Dr. Werrbach's evaluation, the Judge wrote:

> Dr. Werrbach's opinion is given limited weight because it is not supported by substantial medical evidence, and is refuted by ample treating source evidence which indicates that the claimant's symptoms interfere with her functioning to a more than mild degree very intermittently, and for relatively brief periods. Particularly, it does not address the beneficial effects of medication in the context of compliance with medication treatment regimes.

(R. 12.) In effect, the Judge indicated that he viewed the treatment records as demonstrating that MacNeil's symptoms peek above the "more than mild" line only "very intermittently," which suggests that the symptoms of MacNeil's combined impairments satisfy the severity threshold. However, the Judge couched this finding in the further finding that the symptoms only "very intermittently" cross the threshold due to MacNeil's episodic failures in regard to following her medication regime. He also noted that the record divulged non-compliance with treatment for much of 2008 and more than a one-year gap between reported manic episodes. (Id.)

The Commissioner's regulations require that a claimant's impairments be evaluated in light of restorative treatment. Claimants "must follow treatment prescribed by [their] physician if this treatment can restore [their] ability to work." 20 C.F.R. § 416.930(a). Ordinarily, the issue of failure to follow prescribed treatment arises in the context of a claimant who is disabled when a treatment plan is not followed. Soc. Sec. Ruling 82-59, Failure to Follow Prescribed Treatment, 1982 SSR Lexis 25, *1, 1982 WL 31384, *1. When the "failure to follow" issue presents the tipping point between a finding of disabled versus a finding of not disabled, the Commissioner must conduct an analysis of whether the claimant's failure to follow prescribed

9

treatment is justifiable. Id. Here, on the other hand, the Judge did not find that MacNeil would be disabled in the absence of treatment. Indeed, a review of the entire record does not suggest that MacNeil has a viable medical basis to support a finding that she is incapable of substantial gainful activity. Rather, the Judge found that MacNeil's prescribed treatment causes MacNeil's symptoms to have no more than a mild impact on work function. The record contains substantial evidence in support of this finding. In addition to the Judge's evaluation of the longitudinal record, both Dr. Sawyer and Dr. Houston assessed more than three years of psychiatric treatment records (a period extending more than a year prior to MacNeil's first application) and concluded that MacNeil has only mild limitations in the three functional areas of the psychiatric review technique with no episodes of decompensation (category B). Such an assessment is generally indicative of a non-severe degree of impairment. 20 C.F.R. § 416.920a(d)(1).

MacNeil objects that the opinions of Dr. Sawyer and Dr. Houston cannot supply substantial support because there is no indication that they considered Dr. Werrbach's evaluation,[2] in which he predicted difficulty in concentration, understanding, and social interaction. (R. 314-15.) Even if it is true, as appears to be the case, that Drs. Houston and Sawyer did not review Dr. Werrbach's evaluation, I am not persuaded that this omission undercuts the reliability of their medical opinions. The Judge reviewed Dr. Werrbach's report and discussed its findings and reliably explained why it did not undercut a finding of a non-severe degree of impairment. Specifically, the Judge noted that Werrbach's evaluation did not address "the beneficial effects of medication" that was demonstrated by the longitudinal record. (R. 12.) Dr. Werrbach himself predicted this potential assessment. He described MacNeil's mental status in predominantly positive terms and wrote at the end of his report: "She also is off

---

[2] Maine Disability Determination Services enlisted Dr. Werrbach's services in connection with the first application. His evaluation may not have entered the record of the current application until after the referrals were made to Drs. Houston and Sawyer.

10

medication and her ability in these work-related activities might dramatically improve when she goes back on medications." (R. 315.) Given the nature of his findings, which do not hold out a reasonable prospect of a "disabled" finding, and the fact that this was so even though he evaluated MacNeil during a period when she was non-compliant with treatment,[3] I am not persuaded by MacNeil's argument that Dr. Sawyer or Dr. Houston would have made a different assessment if they had reviewed the findings offered in Dr. Werrbach's report.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 21, 2011

---

[3] The same can be said in regard to the impact of Dr. Lester's mental residual functional capacity assessment.

11